**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 13-2212
_____

R.K. and D.K., individually, and on behalf of R.K.,

Appellants

v.

CLIFTON BOARD OF EDUCATION
_____

On Appeal from the United States District Court
for the District of New Jersey
(No. 2:11-cv-06231)
District Judge:  Honorable Katharine S. Hayden

Submitted Pursuant to Third Circuit LAR 34.1(a)
October 1, 2014

Before:  AMBRO, CHAGARES, and VANASKIE, Circuit Judges.

(Filed:  October 8, 2014)
_____

OPINION
_____

CHAGARES, Circuit Judge.

R.K. and D.K., individually and on behalf of their son R.K. (collectively, "the

plaintiffs"), appeal the District Court's March 28, 2013 order granting the Clifton Board

of Education ("the District") summary judgment on the plaintiffs' lawsuit alleging

violations of the Individuals with Disabilities Education Act ("IDEA") and denying the

plaintiffs' motion to supplement the record. The order effectively affirmed the decision of a New Jersey administrative law judge ("ALJ") denying the plaintiffs' petition for relief. For the following reasons, we will affirm the decision of the District Court.

I.

We write solely for the parties and therefore recite only the facts that are necessary to our disposition. R.K. was diagnosed with autism when he was two years old. R.K., his parents, and his sister lived in Clifton, New Jersey at all times relevant to this opinion. When R.K. was three years old, the District classified R.K. as eligible for special education services. On July 27, 2007, the District proposed an Individual Education Plan ("IEP") for R.K. However, R.K.'s parents disagreed with the proposed IEP, and on September 11, 2007, filed a due process hearing petition challenging the proposed IEP and seeking specific services for R.K.[1] Pending resolution of the petition, the plaintiffs arranged and paid for R.K.'s educational program through Progressive Steps, a State-approved early intervention services provider. Around this time, the plaintiffs also learned about the Carbone Clinic,[2] a private clinic located in New York, and arranged for an assessment of R.K. The plaintiffs applied, and R.K. was placed on the Carbone Clinic's waiting list.

---

[1] The plaintiffs specifically requested an "ABA/AVB program, ABA instruction at school and at home, a 1:1 aide trained in ABA and the support of a certified behaviorist." Appendix ("App.") 54. "ABA" stands for Applied Behavior Analysis and "AVB" stands for Applied Verbal Behavior, a subset of ABA that is related specifically to language development.

[2] The Carbone Clinic is not a school, and is not approved by the New York or New Jersey Department of Education.

On March 20, 2008, the plaintiffs and the District reached a stipulated settlement of the plaintiffs' petition, and the District agreed that it would provide, inter alia, 20 hours per week of direct one-to-one ABA/AVB instruction through Progressive Steps. The District also agreed to transition R.K. gradually and fully into a full-day AVB preschool disabled class by September 2008. The settlement stipulated that the parties would convene an IEP meeting prior to the 2008-2009 year to "determine appropriate accommodations, the need for further 1:1 ABA and other related services." App. 56.

The IEP meeting took place on August 11, 2008, at which the District's Child Study Team ("CST") set forth an IEP that placed R.K. in the full-day program and gave him related services, including ABA and AVB services provided by Progressive Steps. The plaintiffs attended this meeting, but deny signing the IEP. In accordance with the settlement and IEP, R.K. started full-time in a class taught by Ilene Platkin in September 2008, and continued to receive 20 hours per week of one-to-one ABA/AVB services from Progressive Steps. R.K. attended the class from September 2008 to February 2009. At the due process petition hearing before the ALJ, several witnesses testified that R.K. made at least reasonable progress in the program during this time.

By November 2008, the plaintiffs learned that the District had retained Dr. Irene Cook, a consultant and Board Certified Behavior Analyst, to review its AVB program. The plaintiffs requested a copy of the report prepared by Dr. Cook following her observation of the program (the "Cook Report"), but the District denied the request.

On January 19, 2009, R.K. was accepted to the Carbone Clinic. The next day, the plaintiffs notified the District of R.K.'s acceptance to the clinic, and requested an IEP

3

meeting to discuss changes to R.K.'s program. The plaintiffs followed up with another letter on January 23, 2009, expressing concerns about R.K.'s current program and requesting a meeting to discuss placement of R.K. at the Carbone Clinic in the mornings. In response, the District convened another IEP meeting on February 3, 2009. At the meeting, the District advised the plaintiffs that it would have to reevaluate R.K. because he had aged out of his class, and also that it would have to assess the Carbone Clinic before it could respond to the plaintiffs' request. The plaintiffs informed the District that starting February 9, 2009, they planned to send R.K. to the Carbone Clinic three mornings per week, and then for five mornings starting March 1. They proceeded to start R.K. at the Carbone Clinic on this schedule.

The CST completed a reevaluation of R.K. and an observation of the Carbone Clinic, and met with the plaintiffs again on April 23, 2009. At the meeting, the District denied the plaintiffs' request that R.K. attend the Carbone Clinic in the mornings and instead proposed that beginning May 8, 2009, R.K. be placed full-time in Platkin's preschool disabled AVB class and, for the 2009-2010 school year, in a kindergarten AVB class for children with autism. The District included these terms in a draft IEP, which was provided to the plaintiffs.

On May 7, 2009, the plaintiffs filed a second due process petition claiming that R.K. was being denied an IDEA-guaranteed free appropriate public education ("FAPE") during the 2008-2009 school year. The plaintiffs' petition also challenged the April 23, 2009 IEP proposal for the 2009-2010 school year, and sought services, including placement at the Carbone Clinic and reimbursement for costs.

4

In or around June 2009, in preparation for the due process hearing, the plaintiffs requested that an expert be permitted to observe Platkin's classroom. The District denied this request on June 11, 2009.

On July 26, 2011, after 16 days of hearings, the ALJ held that the 2008-2009 program and the 2009-2010 IEP provided R.K. a FAPE. The plaintiffs brought suit in the District Court for the District of New Jersey to appeal the ALJ's decision, alleging violations of the IDEA, New Jersey's special education law, and Section 504 of the Rehabilitation Act of 1973. The parties cross-moved for summary judgment, and the District Court granted the District's motion for summary judgment on March 28, 2013.

The plaintiffs also moved to supplement the record, requesting that the District Court admit the Cook Report, Dr. Cook's deposition testimony, and exhibits. The District Court denied the motion, finding that the Cook Report was not "necessarily useful in assessing whether [the ALJ] properly determined that the District's IEPs for R.K. were appropriate." App. 27-28. The District Court observed that Dr. Cook never met R.K. or reviewed any documents related to R.K., and that other witnesses at the due process hearing had testified as to their observations of the District's ABA/AVB program. The court also concluded "that the District's denial of plaintiffs' request to get a copy of Dr. Cook's report did not violate plaintiffs' procedural rights under IDEA such that R.K.'s right to a FAPE was impeded." App. 29. The District Court further held that the District's refusal to allow the plaintiffs' expert to observe Platkin's class did not violate the plaintiffs' procedural rights because "access was not improperly denied and the opportunity to observe the class was sufficiently available to plaintiffs." Id.

5

The plaintiffs timely appealed, arguing that: (1) the District Court abused its discretion by denying plaintiffs' motion to supplement the record; and (2) the District Court erred in concluding that the District had not denied R.K. of a FAPE by violating plaintiffs' procedural rights.[3]

## II.

The District Court had jurisdiction to review the ALJ's decision pursuant to 20 U.S.C. § 1415(i)(2). We have jurisdiction pursuant to 28 U.S.C. § 1291.

We exercise plenary review over a district court's conclusions of law and application of legal standards under the IDEA. See Ridley Sch. Dist. v. M.R., 680 F.3d 260, 268 (3d Cir. 2010). We "review the District Court's findings of fact . . . under a clearly erroneous standard." Id.

We review a district court's evidentiary rulings for abuse of discretion. See Susan N. v. Wilson Sch. Dist., 70 F.3d 751, 760 (3d Cir. 1995).

## III.

## A.

The plaintiffs assert that the District Court erred in finding that the District did not deny R.K. a FAPE by violating the plaintiffs' procedural rights under the IDEA. Specifically, the plaintiffs argue that their procedural rights were violated by the

---

[3] The plaintiffs also assert that the District Court erred in holding that they failed to comply with Local Civil Rule 56.1 by failing to file a statement of undisputed material facts with their cross-motion for summary judgment. Because the District Court did not dismiss plaintiffs' motion on this basis, but rather addressed the merits of plaintiffs' arguments, it is not necessary for us to reach this argument.

District's refusal to both provide them a copy of the Cook Report and allow their expert to observe Platkin's class in preparation for the due process hearing.

Congress passed the IDEA to "ensure that all children with disabilities have available to them a free appropriate public education that emphasizes special education and related services designed to meet their unique needs. . . ." 20 U.S.C. § 1400(d)(1)(A). The IDEA "specifies that the education the states provide to [children with disabilities] specially [be] designed to meet the unique needs of the handicapped child, supported by such services as are necessary to permit the child to benefit from the instruction." D.S. v. Bayonne Bd. of Educ., 602 F.3d 553, 556 (3d Cir. 2010) (quotation marks omitted). These services are usually designed and implemented through an IEP, which is a program of individualized instruction for each special education student. See id. at 557. If parents "believe that an IEP fails to provide their child with a free and appropriate public education, they may challenge the IEP in an administrative proceeding." Id. However, if parents allege a procedural, rather than substantive, violation of the IDEA, such a violation is actionable only if it "results in a loss of educational opportunity for the student, seriously deprives the parents of their participation rights, or causes a deprivation of educational benefits." Id. at 565.

The plaintiffs assert that the District's refusal to give them a copy of the Cook Report violated the procedural rights guaranteed by 20 U.S.C. § 1415(b)(1), which provides that parents of a child with a disability shall have an opportunity to, inter alia, "examine all records relating to [their] child." We first note that there is no evidence in the record indicating that the Cook Report "relates" to R.K., as the Cook Report

7

addressed the District's program generally and Dr. Cook never met R.K. nor reviewed any documents pertaining to R.K. Accordingly, we hold that the plaintiffs' procedural right to examine all records relating to R.K. has not been violated.

However, even assuming the plaintiffs' procedural rights were violated, there is no indication that this procedural violation resulted in an actionable deprivation of the plaintiffs' participation rights, as they allege. The plaintiffs participated in several meetings about R.K.'s IEPs with the District's CST, and provided input that was carefully considered by the District, as reflected by the fact that the CST engaged in an independent assessment of the Carbone Clinic in order to evaluate the plaintiffs' request to send R.K. there in the mornings. We have held that parents who participated in and made suggestions at an IEP meeting had an opportunity to participate meaningfully in the decision-making process regarding their child's education, despite procedural violations that had occurred prior to the meeting and despite the fact that not all of their suggestions were incorporated into the IEP. See D.S., 602 F.3d at 565. Accordingly, although the plaintiffs posit that the CST might have been more receptive to their concerns about the District's autism program if those concerns had been supported by the Cook Report, the fact that the District's proposed IEP did not adopt the plaintiffs' suggestions does not mean that they were deprived of meaningful participation in the decision-making process regarding R.K.[4]

---

[4] To the extent the plaintiffs also argue that their procedural right to "participate in meetings with respect to the identification, evaluation, and educational placement of the child" under 20 U.S.C. § 1415(b)(1) was violated by the District's failure to provide them a copy of the Cook Report, this argument fails for the reasons stated above.

The plaintiffs also assert that the District's refusal to allow their expert to observe Platkin's class violated their right to an impartial due process hearing under 20 U.S.C. § 1415(f)(1)(A). They note that 20 U.S.C. § 1415(h) provides for parents' "right to be accompanied and advised by counsel and by individuals with special knowledge or training with respect to the problems of children with disabilities" and "right to present evidence and confront, cross-examine, and compel the attendance of witnesses." 20 U.S.C. § 1415(h)(1), (2). Once again, we do not believe that the record reflects a violation of these procedural rights. The ALJ held an extensive hearing, during which the plaintiffs presented testimony from a number of witnesses, both lay and expert. The plaintiffs do not allege that they were denied counsel or prevented from cross-examining the District's witnesses or presenting their own; rather, they appear to assert that the inability to present an additional expert witness deprived them of their right to an impartial due process hearing. We do not find this argument persuasive.[5]

However, even assuming a procedural due process violation, we once again hold, for the reasons stated above, that the District's refusal to allow the plaintiffs' expert access to Platkin's class did not deprive the plaintiffs of their right to participate in the decision-making process regarding R.K.'s education. On the contrary, the plaintiffs

---

[5] The plaintiffs also appear to argue that the refusal to allow their expert to observe the District's proposed program violates their procedural right to an "independent educational evaluation" under 20 U.S.C. § 1415(b)(1). However, the plaintiffs do not quote the relevant clause of the statute in its entirety. The section provides that a parent is entitled to an opportunity to "obtain an independent educational evaluation of the child." 20 U.S.C. § 1415(b)(1) (emphasis added). Observation of the proposed program while R.K. is not in attendance does not implicate this procedural right.

participated meaningfully in the process, had their concerns considered by the CST, and had the ultimate decision carefully reviewed by an ALJ after extensive testimony.

B.

The plaintiffs also argue that the District Court abused its discretion in declining to supplement the record with the Cook Report and evidence of the District's refusal to allow the plaintiffs' expert to observe Platkin's class.[6] The IDEA permits a party to request that the court "hear additional evidence" beyond that which was admitted at the administrative hearing. 20 U.S.C. § 1415(i)(C). A district court must "exercise particularized discretion in its rulings so that it will consider evidence relevant, noncumulative and useful in determining whether Congress' goal has been reached for the child involved." Susan N., 70 F.3d at 760.

As stated above, the Cook Report is not particularly relevant or useful, as it does not address or concern R.K. in any way. Similarly, evidence of the fact that the District Court denied access to a particular expert of the plaintiffs' in June of 2009 would not be at all useful to determining whether R.K.'s specific education needs were being met, but rather would serve only potentially to prejudice the factfinder against the District.

---

[6] The plaintiffs assert that the District Court failed to consider the relevance of the proffered evidence to their procedural claims, focusing only on their substantive claims. This argument is unpersuasive in light of the fact that, although much of the District Court's analysis focused on the relevance of the Cook Report to the plaintiffs' substantive FAPE claims, the court explicitly held that the failure to provide the Cook Report and the denial of access to the plaintiffs' expert did not violate plaintiffs' procedural rights under the IDEA. See App. 29. For the reasons stated above, we agree with the District Court's holding.

Accordingly, we hold that the District Court did not abuse its discretion in denying the plaintiffs' motion to supplement the record.

## IV.

For the foregoing reasons, we will affirm the District Court's order.